4-11-1093. Counsel, you may proceed when ready. Thank you, Your Honors. Jeff Hipsch, on behalf of the employer, Mr. Bult's, Inc. We have another manifest weight case with a medical issue. We think the decision of the Commission is against the manifest weight of the evidence. It should be reversed. The arbitrator's decision and the dissenting Commissioner's decision is correct. Petitioner's causal connection opinion in the case carries the weight for them. It's based on Dr. Lorenz's opinion. Dr. Lorenz was given a flawed history, completely flawed history, by the petitioner. He said he had no prior back problems, and he certainly did. He didn't disclose that. He didn't have treatment for more than a month before the accident. It's not consistent with the record. I think that the old saying that an expert's opinion is only as good as what it is based upon, is persuasive in this case. Here, if we look at the entire record, the opposite conclusion on causal connection really is clearly apparent. I mean, the Commission did spend 15 pages coming up with the numerous facts that they've recited, but if you look at all of them, they really point in favor of responding. Petitioner has not carried their burden of proof on the issue of causation between the condition from September of 2007 and going forward leading to the back surgery that Dr. Lorenz performed. The causal connection opinion really is not a reasonable inference by the Commission. As Commissioner Lindsey said, it is speculative. They seem to assume that Dr. Lorenz still would have said causal connection even if he had the entire history and was able to consider the entire record in coming up with their finding that there is a causal connection. Petitioner does have the burden of proof in this case. Who is Dr. Shea? Dr. Shea is a neurosurgeon at Loyola. Petitioner was sent to Dr. Shea for an IME and for treatment. Yes, and the minute Petitioner comes back to Dr. Shea, it's his choice to... Okay, but Dr. Shea also opined that the work accident could have caused a herniated disc. Correct, could have. So does that sort of help the Petitioner? It does sort of help Petitioner, but if you're relying upon Dr. Lorenz's opinion primarily coming up with your answer and it's flawed, then it's not good enough. And again, he said could have, and at the end, Dr. Shea released him from care and released him back to work. So we have Lorenz clearly opining there was a causal connection. We have Shea saying might have, could have, ostensibly supporting, and that's not enough evidence in the record for the Commission to place a decision. Not after the Petitioner is released from care and there's no surgery. There's causal connection up to September of 2007 where we concede that. Well, the Commission did specifically rely on Dr. Shea's opinions as well as... They restated it in their opinion. I know that they're saying they're relying upon it. I'm finding ongoing causation in this case. The Commission relies not only on Dr. Lorenz, but also on claimants' uncontradicted testimony, etc., etc., and the causation opinions of Dr. Shea, the employer's selected provider. Yes, and that also includes claimants' uncontradicted testimony, which was not credible and correct. Who found that? The finder of that. What finder? The Commission. Well, that Petitioner's testimony was not correct? It's clear from reading the record. The Commission found it was not credible. Did you have prior bad problems? Pause. Oh, I saw a chiropractor before. So then you want us to substitute our judgment on credibility for the Commission, and can you cite the authority for that proposition? I do not want you to do that. I think that you need to determine, as the referee in this case, whether Petitioner carried his burden of proof forward by relying on Dr. Lorenz's opinion. But that's a little different than asking us to weigh the credibility of the claimant. Correct. Correct. I am not saying it was merely the credibility of the witnesses. There is a medical opinion. And I think that the medical opinions that should be relied upon by the finder of facts should have a basis in the record. That's wrong. That's not the case here. Is there a doctor who gave a no causation opinion? No. Well, no. Well, they're assuming it's entirely speculative. If I give you a causal connection opinion, but it's wrong, it's not based upon the record, that's still not good. Opinion and wrong, you know, those two really don't go together. I understand. But one's an absolute, one's not. Okay. Well, it's our position that they did not carry their burden of proof in coming through with this. And Arbitrator White certainly made the right decision. She didn't find Petitioner to be credible. And I don't think that the Commission's 15 pages still supports their overruling. I'm not saying that they are not the finder of fact, because clearly under the law they are, but they're not allowed to make unreasonable inferences. The decision of the Commission should be reversed, and the arbitrator's decision should be reinstated. Thank you. Thank you, Counsel. Counsel, you may respond. Thank you, Your Honors. May it please the Court. Counsel, my name, again, is Tommy Stroud on behalf of Mr. Brinkman. I don't want to belabor this case, Your Honors. I just would point out a couple of quick things. You hear a lot of manifest cases. You heard the arguments this morning, one doctor against. You just pointed out that there is no causation opinion against us. And if we're going to try cases and come before this Court and lose on manifest weight, we have not only our own treating physician in support, but respondent's own IME. And I can't win those cases when these are tough enough, I give up. I don't want to practice and work off anymore, because if I have their expert supporting me and my own expert, what else can I do? The manifest weight of the evidence is clearly in support of the petitioner. Arbitrator White, her decision was inconsistent anyway, because it basically finds, it says there's all these inconsistencies in prior medical treatment, which was just minor chiropractic treatment, but then still conceded everything was related up to September 2007. So I point out my brief, it's simple. The question is September 2007 to when he goes and sees Dr. Lorenz in early 2008. Dr. Shea, their IME said he had a herniated disc, L5S1. The first surgical recommendation was not Dr. Lorenz, it was Dr. Shea, who referred the petitioner out for possible surgery with Dr. Knokholz. Dr. Knokholz said, let's do a microdiscectomy at L5S1, the same disc that Dr. Shea already said was related. And guess which is one of the two discs that Dr. Lorenz did surgery on in 2008, L5S1. There's a clear connection of the medical history here. I have all of the support, all of the evidence in support of my client, all of the medical opinion in support of my client. Manifest weight, there's not a single opinion against us medically in this case. It is only the respondents putting themselves up, and originally the arbitrator, as medical doctors themselves trying to say that they know more than both of the doctors, including their IME, does know. What was the arbitrator referring to in terms of your client's behavior in terming it bizarre? Respectfully, I'm going to have to ask the arbitrator. I don't understand the decision and even the respondent's position in saying all of this bizarre behavior and not being honest about the chiropractic treatment or whatever, all of a sudden means in early 2008 there's no longer a causal connection opinion. But none of that matters for a causal connection opinion up to September 2007. It just doesn't make any sense. You're also relying on the fact that the documented medical evidence establishes that. Notwithstanding, if somebody thinks he's bizarre flaky, you're pointing to the objective medical records. Exactly, Your Honor. The only prior medical history was in 2004 with some minor chiropractic treatment. The commission rightfully discharged that. You want to talk about manifest weight, just because the commission goes on and on and on for many pages doesn't necessarily mean anything. But they went on for 15 pages reciting the facts, saying why they believe what they did. We have two opinions in support of us and respectfully ask that the court uphold the findings of the commission. Thank you, counsel. Counsel, you may reply. Very quickly. The bizarre behavior was noted in the medical records. It's there. It's walking like you're riding a horse and it's taking a wheelchair when you walk in. Things like that. The physicians at Loyola were, a petition was sent to the physicians at Loyola by a respondent, of course. He had treatment and ultimately they concluded that surgery was not correct. They did eventually a CT myelogram procedure and concluded that surgery was not the right thing to do. Interestingly, Dr. Lorenz testified he didn't look at those films. The question is causal connection after September 2007, the last treatment at Loyola. And it's the appellate court's duty to determine whether the commission's decision is against manifest weight in the evidence or not. We'll respectfully await your opinion. Thank you. Thank you, counsel, both for your arguments on this matter. It will be taken under advisement. This position shall issue. We'll stand and recess until tomorrow morning at 9 a.m.